AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California


FILED
APR 0 5 2018
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CA.
BY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
One gold Motorola cellular telephone, Model XT1765 )
IMEI: 355674086854349 )
Track ID: ZY224M533X )

Case No.   **18MJ1575**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-1

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B-1

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952, 960, 963 | Conspiracy to Import Methamphetamine |

The application is based on these facts:
See attached affidavit of Federal Bureau of Investigation Special Agent Vincent M. Abatemarco.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Vincent M. Abatemarco, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/4/18

*Judge's signature*

City and state: San Diego, California   Hon. William V. Gallo, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-1

## PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 952, 960, 963 is described below:

One gold Motorola cellular telephone,
Model XT1765,
IMEI: 355674086854349,
Track ID: ZY224M533X,

("**Target Device #1**"). Agents seized **Target Device #1** from the person of Vilma Xiomara BUENO incident to her arrest on March 27, 2018. **Target Device #1** is currently in possession of the Federal Bureau of Investigation in the evidence vault located at 10385 Vista Sorrento Parkway, San Diego, California, 92121.

## **ATTACHMENT B-1**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the procedures outlined in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of February 1, 2018, to March 27, 2018:

a. tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation methamphetamine or some other controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or some other controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 21, United States Code, Sections 952, 960, 963.**

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Vincent M. Abatemarco, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic devices (collectively **Target Devices**):

    a. one gold Motorola cellular telephone, Model XT1765, IMEI: 355674086854349, Track ID: ZY224M533X (**Target Device #1**), as described in Attachment A-1 and incorporated here;

    b. one black Apple iPhone, Model: MQAM2LL/A, IMEI: 35 304409 338065 8, SW: G550T1UVU1APF1, S/N: F2MVWNX4JCL8 (**Target Device #2**), as described in Attachment A-2 and incorporated herein; and

    c. one black and white Telefano Celular LANIX, Model: Ilium X210, IMEI: 357742080115419, FCC ID: ZC4X210 (**Target Device #3**), as described in Attachment A-3 and incorporated herein;

and seized evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960, and 963, as outlined in Attachments B-1 to B-3.

2. This search supports an investigation and prosecution of BUENO and VILLELA following their arrest for conspiracy to import methamphetamine on March 27, 2018. **Target Device #1** was located on BUENO. **Target Device #2** was located on VILLELA. **Target Device #3** was located in a silver Ford Fusion, which had been driven by BUENO across the San Ysidro Port of Entry and to a drop location in Los Angeles, California. Federal Bureau of Investigation Special Agents seized the **Target Devices** incident to BUENO and VILLELA's arrest. **Target Devices** are currently being stored as evidence at the Federal Bureau at 10385 Vista Sorrento Parkway, San Diego, California, 92121.

3. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachments B-1 to B-3.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review

1

of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since March 2015. I am currently assigned to the San Diego Field Division working as a member of the Major Mexican Traffickers Strike Force, and have been assigned to this squad since October 2015. My duties include the investigation and apprehension of individuals involved in drug related crimes. I have been involved in investigations concerning the possession, manufacture, and distribution of controlled substances, as well as the methods used to finance narcotics transactions and launder drug proceeds. Prior to joining the San Diego Field Division's Major Mexican Traffickers Strike Force, I was an acquisition professional with the Department of Defense for over 11 years.

6. Since I became a member of the Major Mexican Traffickers Strike Force, I have participated in more than 60 surveillance operations, some of which involved the use of wire intercepts and other electronic surveillance techniques. During those operations, I have used traditional investigative techniques, including participating in monitoring wiretaps, interviewing drug traffickers, and utilizing confidential human sources to purchase narcotics. From my 21 weeks of training at Quantico, VA and experience, I have become familiar with investigative methods and enforcement of state and federal narcotics laws. Based upon my experience, I have also become familiar with methodology, language, and patterns used by narcotics traffickers. I have also conducted numerous physical, electronic, and wire surveillances.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular

telephones to maintain communication and location information with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distribution amount quantities of controlled substances, such as cocaine. Typically, load drivers smuggling controlled substances across the border are in telephonic contact with co-conspirators immediately prior to, during and following the crossing of the narcotic load, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. From my training and experience, I am aware that narcotics smugglers and their organizations use cellular, digital, and satellite telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular, digital, and satellite telephones.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

  a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.
  b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.
  c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.
  d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.
  e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

3

f.  Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

9.  Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a.  tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

4

e.  tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

10. This affidavit is based on my own investigation, the review of evidence obtained during the course of this investigation, and information disclosed to me by other law enforcement officers and agents, and my personal observations and knowledge. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish foundation for the requested warrant. Dates, times, and amounts referenced herein are approximate.

## FACTS SUPPORTING PROBABLE CAUSE

11. On March 27, 2018, at approximately 8:05 a.m., BUENO crossed the San Ysidro Port of Entry (POE) driving a silver Ford Fusion. BUENO was the registered owner and had her minor child in the vehicle. BUENO drove to an ARCO gas station in East Los Angeles, California where agents observed VILLELA arrive at the ARCO gas station in a Ford F-150. VILLELA and BUENO exchanged vehicles. At that point, law enforcement officers approached the two vehicles and identified themselves. BUENO provided her verbal and written consent to search her Ford Fusion. During the search, law enforcement officers discovered 13 clear, vacuum-sealed packages which contained a white crystalline substance, consistent with the appearance of methamphetamine, hidden in a trap in both the driver and passenger seats which weighed approximately 7.6 kilograms (16.75 pounds). One additional package contained an unknown substance, which is suspected of containing fentanyl. Due to the dangers of field-testing suspected fentanyl and the possible exposure with the other packages, agents sent all 14 packages to the Drug Enforcement Administration (DEA) Laboratory to be analyzed. **Target Device #3** was also found during a search of the Ford Fusion.

12. Both BUENO and VILLELA were arrested at approximately 11:05 a.m., and

charged with conspiracy to import methamphetamine, in violation of Title 21, United States Code, Sections 952, 960, 963 in the Southern District of California.

13. In a search of VILLELA's person incident to arrest, agents seized **Target Device #2** and $3,653.00 in cash of suspected narcotics proceeds. Agents also seized in VILLELA's F-150 vehicle a loaded Smith and Wesson Sd40 VE firearm with the serial number scratched off. In a search of BUENO's person incident to arrest, agents seized **Target Device #1**.

14. Post-arrest, BUENO was read her *Miranda* rights within six hours of arrest, and she elected to waive her rights and elected to make a statement to agents. BUENO admitted she had exchanged vehicles previously at the ARCO gas station, and she believed she would be smuggling bulk cash into Mexico secreted in the Ford Fusion. BUENO provided both verbal and written consent to search her telephone and admitted to using **Target Device #1** to communicate with a Tijuana-based drug trafficking facilitator prior to arriving at the ARCO gas station.

15. Post-arrest, VILLELA was read his *Miranda* rights within six hours of arrest, and he elected to waive his rights and elected to make a statement to agents. VILLELA admitted he was recruited into the drug trafficking organization in February 2018 when a high school friend visited VILLELA at his residence and asked if he wanted to make some extra money. He then was put in contact with a Tijuana-based drug trafficking facilitator. VILLELA stated that **Target Device #3**, found in the Ford Fusion, was his. VILLELA provided both verbal and written consent to search his two telephones **Target Device #2** and **Target Device #3** and admitted to using **Target Device #3** to communicate with a Tijuana-based drug trafficking facilitator. A review of **Target Device #2** identified a missed call on March 27, 2018 from telephone number known to be associated with a Tijuana-based drug trafficking facilitator communicating with **Target Device #1.**

16. Based upon my experience investigating narcotics smugglers using vehicles to conceal narcotics through the Ports of Entry and the particular investigation in this case,

I believe that **BUENO** and **VILLELA** likely used **Target Devices** to coordinate the conspiracy to import methamphetamine into the United States. Based on my investigation of drug importation and distribution conspiracies, telephone contact with smugglers can begin several weeks before drugs are loaded in the vehicle and includes coordination on crossing the border to develop a crossing history or pattern. We know BUENO began crossing the silver Ford Fusion in early March 2018, and the VILLELA was recruited into the organization February 2018. I respectfully request permission to search **Target Devices** for data beginning on February 1, 2018, up to and including March 27, 2018.

17.   I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Devices** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of BUENO and VILLELA, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**.

## **METHODOLOGY**

18.   It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device

may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, there is probable cause to conclude that BUENO and VILLELA used the **Target Devices** to facilitate violations of Title 21, United States Code, Sections 952, 960, and 963. **Target Devices** were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of the conspiracy to import methamphetamine.

22. Because the **Target Devices** were promptly seized during the investigation of BUENO and VILLELA smuggling activities and have been securely stored, there is

8

probable cause to believe that evidence of the conspiracy to import methamphetamine committed by BUENO and VILLELA continues to exist on the **Target Devices**.

23. WHEREFORE, I request that the court issue a warrant authorizing FBI Special Agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 to A-3, and the seizure of items listed in Attachments B-1 to B-3, using the methodology described above.


I swear the foregoing is true and correct to the best of my knowledge and belief.

Vincent M. Abatemarco
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 4 day of April, 2018.

HONORABLE WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE

9